Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Ann P. Jorgensen presiding. Please be seated. Your Honor, the first case on the dock this morning is 2-23-0006. Habdab, LLC, claims as Appellant the County of Lake and Village of Mundelein Defendant Appellee. Arguing on behalf of the Appellant, Mr. Robert T. McDonald. Arguing on behalf of the Appellees, Mr. John Christensen. All right, gentlemen, are you both ready to proceed? Yes, Your Honor.  Good morning, Your Honors. May it please the Court. The Road Improvement Impact Fee is to assure that new development pays its fair share of the impact that the development may have on the road infrastructure in the county. The Road Improvement Impact Fee law requires a series of steps to be followed in order to determine the amount of the fee that a landowner developer is required to pay. Here, the Road Improvement Impact Fee sought to be imposed and collected from the plaintiff does not follow the law. It is an unfair fee because it is determined on a per acre basis without regard to the use of the property. But there are several different sections, right? The per acre fee is based upon what section the property is in. That's correct, Your Honor. This particular property is in a zone which requires a per acre fee of $11,555. Would you agree that in this case, there's a lot going on here? You've got the Intergovernmental Cooperation Act, the Constitution at play, the impact fee provisions, and the annexation provisions, correct? You do. And what is the most specific provision with respect to the overall agreement and the way it was applied? If I'm understanding the Court's question, the most important statute with respect to this case? No, the most specific. The most specific? This was an annexation. This was an annexation agreement, intergovernmental agreement regarding annexation. Well, I don't agree with that characterization for this reason, Your Honor, is that we have the intergovernmental agreement between the three municipalities. Which I would encourage. Would you agree that the Constitution and the General Assembly encourages intergovernmental agreement to solve problems between municipalities, counties, et cetera, correct? And that's the key, between municipalities in this case as well as the county. But this particular intergovernmental agreement required the municipalities to put into annexation agreements to be specific to this case, a fee to be charged to property owners who were not parties to the intergovernmental agreement, who had nothing to do with negotiating that per acre fee that was to be applied to those property owners. So I agree with you, Your Honor, that intergovernmental agreements are to be encouraged to address the issues and problems between municipalities and counties. But in this case, it took it too far. It required the municipalities to include within annexation agreements a condition that required this per acre fee, which, A, did not follow the rules. Does the fact that they put that in there bar negotiations? Because you can always, you know, legislative bodies have the authority to negotiate. And that, I have a feeling that that did not occur here. Or maybe it did. I don't know. It did not. The annexation agreement. Let me ask you this. Sure. Go ahead. Well, I was just going to say, to answer your point, to address your point, is that, and I'm assuming it was a question, but is that the annexation agreement here did not include a provision for the payment of the impact fee, neither the first nor the First Amendment or the second. And in the Second Amendment, it only referred to the obligation to pay the fee if we're not successful in the outcome of this case. So at no point was there a negotiation whereby the property owner developer agreed to pay the impact fee that was reflected in the intergovernmental agreement. Is your position that the Habitat had no idea that the impact fees were going to be required? They did not until, certainly not at the time. I remember the deposition of, I forget his name, the owner. Mr. Velo? Mr. Velo. Yes. He said, I mean, it was very vague, but he didn't remember. He did not. There were some e-mails that were referenced. That's correct, Your Honor. He did not know at the time of the first annexation agreement. He could not recall if he found out about the fee sometime between the first and the second or the second and the third. I don't want to take any more. I have one more question to ask you. Intergovernmental cooperation, as I mentioned, is encouraged by the Constitution and the Intergovernmental Cooperation Act. In this case, the IGA was approved by the county as well as the village by ordinance, a passage of an ordinance by each. So doesn't that IGA enjoy the presumption of constitutionality, which it's your burden to show it's unconstitutional? It's unconstitutional because there's also a very specific law called the Road Improvement Impact Fee Law, which prescribes the manner in which those fees are to be calculated and collected. That wasn't followed. Your position is that the timing of the payment, how would the impact fees be applied here? The impact fees were to be collected at the time of annexation, which is the only possible time that that could ever occur. So it's an annexation fee then, is it not? It is not. Because that's not for the occupancy permit, et cetera. It is not an annexation fee. It is a fee, would have been a fee, keeping in mind that it never occurred. There is no annexation agreement that requires the payment of the fee. What was contemplated by the IGA is that the annexation agreement would have a provision requiring the payment of this Road Improvement Impact Fee at the time of annexation. But there's no question, but the language of the IGA mirrors, in substance, the language of the Road Improvement Impact Fee Law, and my conclusion is it is clearly a Road Improvement Impact Fee. And therefore, the statute is required to be complied with in terms of how it's calculated and when it's to be paid. And I don't believe that the county and the villages can get together to decide amongst themselves to avoid that law. Section 902 provides that the General Assembly further recognizes imposition of such Road Improvement Impact Fees is designed to supplement other funding sources. Supplement. Why isn't the impact or the annexation fee another funding source? It is the supplement. The impact fee is the supplement to other sources. The language of the statute says the impact fees are designed to supplement other funding sources. The other sources would be county funds. Why do they have to be county funds? Other funding sources could be an annexation fee, could they not? No, because this isn't an annexation. And I know we're agreeing to disagree about this point, but this is not an annexation fee. This is an impact fee which was to be contained within an annexation agreement. Annexation agreements typically contain lots of fees that typically a municipality would seek to charge, park fees, library fees, et cetera. This would be one of those fees. But it's not an annexation fee. Let me ask you this, how would the county calculate the fee for this property which is just open for a clean fill operation? That's the problem, $11,555 per acre regardless of use. And as the record reflects, the property immediately next door, immediately next door is a SCIA freight terminal. So how can one assess an impact fee for road improvements on a truck terminal on the same basis that you would ascribe to a property that's going to be a clean fill operation from somewhere between three and seven years, and after that it's going to be donated to the village of Mundelein for park use? I have a question. Here's the bottom line. You didn't agree to it until the second amended annexation agreement. So you agreed to it at that point. We did not. I'm sorry, I thought, were you done, Your Honor? I didn't. Yeah. Okay, we did not. What we agreed to do is we agreed that the fee would not be paid. It is not due. No, you agreed it would be deferred depending on the outcome of this case. Correct. And if the court were to rule in our favor that this fee is an unlawful fee for all the reasons that we say that it is, then the fee is not required to be paid and we would not have to pay the fee. If we lose this case, yes, we have then at that point agreed with the village of Mundelein that we're not going to, nor could we, I think, stick the village of Mundelein with the payment of the fee. We would, I think the specific language is we would indemnify the village of Mundelein with respect to the fee. But only if we lose this case. Here's the fork in the road to me. You didn't agree to it. Then in the second, I believe it was the second or the third or the second amendment, that language is in there. Yes. So why is this then not an annexation agreement, as opposed to trying to fit this payment of fees into the requirements of the statute? It's an annexation agreement. But the annexation agreement, specifically the Second Amendment to the annexation agreement, identifies the fee and it also identifies the pendency of this lawsuit and all of the issues pertaining to it. It does not require the fee to be paid upon annexation pending the outcome of this lawsuit. Hence, the obligation to pay the fee depends on the outcome of this lawsuit. So that's all that was agreed to be paid. Thank you. Mr. O'Donnell. Yes, Your Honor. You criticized the county, and appropriately so, for citing shore. But would you agree that even though the county and the trial court should not have relied upon shore, we're not prohibited from looking at that analysis, correct? Yes, I think that's fair. If you do a word search, it's the number nine case. So it pops right out. But, again, I think you're correct. The county should not have cited shore. However, even if we were to address the substance of shore, I think you'd distinguish it quite well. Okay. The punch line here is that the county says that this is not actually a road improvement impact fee. The county's position is it's not a road improvement impact fee because the definition in the statute only identifies road improvement impact fees as those fees that are collected at the time of the issuance of a building permit or a certificate of occupancy. And your argument is that we should be looking at the purpose here, and the purpose was for road improvement or maintenance, right? Well, yes. And if one were to read the definition as applying to be the only circumstances under which the impact fee law applies, the law could be readily avoided. Here's another point. You agree that the IJA was approved by ordinance by both the county and the village. Generally, a statute or ordinance is presumed to be constitutional unless a contrary interpretation clearly appears. And the county argues it does not clearly appear because of the timing of the payment. The timing of the payment is only one aspect of the payment. I would suggest that the proper reading of the definition is the two most common points in time at which these sorts of fees are required to be paid, issuance of building permit, issuance of certificate of occupancy. But those are not the only time periods. If the court were to look at Section 912, which describes the timing of payment, that has a third. And the third is unless the parties otherwise agree. Well, if that provision provides another option for the time at which the impact fee can be paid, that in and of itself defeats the argument that the county posits that it's not a road improvement impact fee unless it's to be paid at those two points in time. I also would suggest that if we look at Section 904, 904 is unequivocal as to when the impact fee is, quote, no impact fee shall be imposed by a unit of local government within a service area or areas upon a developer for the purpose of improving, expanding, enlarging, et cetera, highways, unless you apply, unless one complies with the road improvement impact fee law. It's unequivocal. So that language is not limited to road improvement impact fees that are collected only at two discrete points in time. It would be absurd to suggest that if the road improvement impact fee is to be paid at the time of application for a building permit, the law doesn't apply. That would literally be, I would suggest to the court, that would be an absurd ruling, an absurd interpretation, excuse me. So the other argument that the county makes is that, and I think we addressed this, in your Honor's questions, is that the, well, it's imposed pursuant to an impact fee. Well, that's how it was designed to be imposed, but it actually wasn't, because there is no annexation agreement to which this landowner agreed that would require the payment of the fee. So it's a lot of money because you didn't agree to it, or had you agreed to it up front, you would still be making these arguments? And I've given that argument a lot of thought, your Honor, because it's the tension between the annexation statute and the impact fee law statute. Right, and which trumps? And I believe, because of the language of the impact fee law, I believe the impact fee law trumps, because the impact fee is absolute in identifying how the fee is to be calculated. Again, I bring this point back up. You bear the burden of overcoming the presumption of constitutionality. In other words, you have to show that the county's rationale is implausible. It just doesn't work. It, by no measure does it work, your Honor. It doesn't, first and foremost, we all agree it doesn't comply with the law. And they're saying that I don't have to comply with the law because of two reasons. One, which actually didn't occur. There's an annexation agreement that requires the fee to be paid. And the other implausible argument is that the definition of the road improvement impact fee in the statute applies only in two very limited circumstances, one of which is not in play here. So what are we left with? We're left with either the law applies, and the law derives from the Northern Illinois Homebuilders case, and the language, the operative language of that case is actually embodied in the statute. These fees are to be specifically and uniquely attributable to the use of the properties against whom the fee is to be sought. And this one clearly is not. You know, what was the guy's name, the manager, village manager? John Lebedoff. Who was the village manager during the first annexation agreement. Yes. And he's also the guy that helped draft the IGA. Yes. And conveniently, the payment of the fee is not part of the annexation, the original. I think. For a second. It's just, I mean, that's very suspicious. I'm not certain what Your Honor means by suspicious. I find it actually revealing because Lebedoff said that the fee was designed to avoid the application of the impact fee law. That's what the IGA was designed to accomplish. I don't think that's a proper public purpose. But then it's omitted from the annexation agreement. And then it's omitted from the annexation agreement, which I also find to be revealing because I think that reflects the fact that that had been the village of Mundelein's position, that the fee was actually an unlawful fee because it avoided, it was designed to avoid the impact fee law and to follow the thread, which I agree with. Did anybody bring that up to the village trustees? Not in the context of the record, Your Honor, so I can't answer the question beyond what the record reflects. One question. Would it matter if the signatory on the other side of the IGA was not a home rule municipality? I don't think it would matter. I don't think even a home rule municipality could take a look at the IFL and say we can enter into an intergovernmental agreement in order to avoid what the law requires in terms of how these fees are to be calculated and paid. I don't believe that's an out, if you will, for a home rule municipality as to one who is not. Thank you. Any other questions? Just so many more questions. Counsel, thank you. Of course, we'll have an opportunity for a reply. Good morning. Good morning, Justices. My name is John Christensen. I'm here with Paul Counsel, Gunnar Gunnarsson, and we represent the County of Lake this morning in the appeal. I wanted to address one question you raised early on, which was whether the IGA fee was raised initially before the annexation agreements occurred. In fact, the village did raise it back in 2016 with counsel for Mr. Havdab, and for whatever reason, it's unclear in the record. It doesn't show up in the original annexation. What document is that in? I can cite you to the record. There was an email that was sent by the community. That's the same email that was discussed during the deposition? I believe it was discussed when he was asked about it. What's the cite? Cite-wise, I've got the record, pages 1153, 1551-54, 1517-1519. And those cites should include a copy of that email that was sent. The point being, it was initially raised as one of the fees that was going to be applicable to the annexation agreement. For whatever reason, it doesn't make its way into the annexation agreement regarding Parcel 1. The amendment to the annexation agreement would broaden Parcel 2, and as I think the courts recognized, when it came to Parcel 3, the annexation occurred regarding Parcel 3, and created this combined Parcel 1, 2, and 3 together, which occurred eight months after the litigation was filed. That's when we finally address the IGA fees, and we have this agreement within the Second Amendment that says, okay, HAPAC's going to pay those IGA fees upon final development approval, but then as they carve out, they don't have to pay it until this litigation effectively is terminated, however that occurs. But you agree with counsel that Section 904 is pretty specific. I think what's specific is the definition under the IFL, which specifically defines what a road impact fee is. Let me ask you this. The only difference that I notice is the timing of the collection. Why does the timing of the collection take the fees out of the road impact fee statutory scheme? I don't think it's determinative of the timing. It's determinative of how the legislature defined what the road impact fee is under the statute. Well, they define it specifically as being contingent on the issuance of a building permit or payment. That's when the payment occurs. That's how they define the actual road impact fee itself. While that under the statute later on is defined as when it can occur, it also can occur by agreement earlier under the impact fee law. The definition is what controls. They tell you what this applies to. That is not the situation here. So it doesn't meet the letter of the definition. It isn't a fee. It isn't an impact fee. It's not a road improvement impact fee under the statute. And that leaves you free to draft an agreement that should then be an annexation agreement for an additional source of fees that would be used for exactly the same thing as the impact fees. Well, I think that's authorized by the Illinois Municipal Code. It never touches on the Illinois Municipal Code. It didn't touch on it before the trial court. It didn't touch on it on this appeal. That's the controlling statute. It allows a municipality and a property owner by agreement, which usually is a contractual arrangement entered into between the developer and the municipality to agree either for donation of land and money. Well, let's stop right there. You said by agreement. There's no agreement here. How do we get around that? There simply is no agreement. Well, they've agreed to pay through that Second Amendment upon termination of the lawsuit. And our cause of action within the litigation is not against HATDAP. Ours is against the village for breaching their obligation under the IGA. And their obligation under that IGA was to include provisions. I appreciate that, but there's no agreement on behalf of the developer to pay these fees. Other than, okay, you've got me over a barrel. I want to annex more property. So, okay, I'll put this into the Second Amendment agreement. Well, they didn't have to agree to that. There's no right to annex into the village. They made that choice themselves. And they agreed by way of that language that they, in fact, are going to pay the fee if they're ultimately unsuccessful with this lawsuit. That is what their agreement is. And so that's what you hang your hat on as the agreement, what's in the Second Amended Annexation Agreement. Well, I think in part, I think the point being what's at issue here is that the IGA fees, to the extent they're going to apply to HATDAP, they're going to flow through an annexation agreement. And the Illinois statutory scheme and the Illinois Municipal Code allows for an annexation agreement to provide for those fees. Whether, in fact, HATDAP ultimately has agreed to pay those fees, that may raise a question whether we even have a controversy here that is subject to a back action. If they're saying, hey, we never agreed to pay any fees, if our cause of action is against one line for their breach of the IGA and their obligation to include that within the agreement, well, one of the elements with regard to a back action is you've got to have a controversy existing between the two parties. I guess I would ask what is that controversy when you have a plaintiff, and they hit this hard in their reply, saying, hey, we never agreed to do anything or pay anything. Let me ask you this. The citation is short. Would you agree that that should not have been done? And the amendment to the rule is very clear. Only dispositions issued after January 1 of 2021. I would respectfully not agree, and the reason being when we cited to it, we simply, in a footnote, said this case effectively is out there. It's a non-persuasive Will 23 decision, and we're not relying on it as persuasive authority, but simply to bring it to the court's attention that it's out there because it's the one case on point. So that's your method of explaining it instead of us using the rationale. Well, that's in part. But the rule itself, when you look at the old rule, specifically in the will, it had language in there saying you could not cite. They took that language out with the amendment. Now it just talks about being able to cite it for persuasive authority, and we did not do that. Any argument we had regarding that particular case only came in response to plaintiff's arguments concerning the case either not being properly ruled upon by that court or that the trial court in this case improperly relied upon the rationale within that case as a sound basis to rely upon for their ruling. We do agree that the case is distinguishable because unlike in short, the plaintiff in that case was aware of the IGA when he sought to annex the parcels. He was aware of it, and his predecessor had agreed to it. Well, I think, Brian, when you take a look at the record, the plaintiff was aware that the IGA was out there. It's a public record. It was recorded. It was raised by the village with counsel before the annexations ever occurred. So the fee, either way, they're aware of the fee's existence. I don't think it's, I think the rationale, Joliet, is equally applicable here. I think it does provide a sound basis. The most important part was that they specifically found that the impact fee law, the definition is, hey, it's got to be, you know, basically contingent on the issuance of this holding permit or certificate of occupancy. We don't have that occurring here because it's flowing through an annexation agreement, and that would be the same methodology that would be applying in the instant manner. So I think the rationale certainly, in short, is sound and something this Court could certainly rely upon and adopt in making its ruling. So, and we've discussed some of the main points, but I think you have plaintiffs, they've ignored the requirements under the Equal and Municipal Code that allow for an annexation agreement to include the donation of money, and certainly in this case, Mundelein, by way of that section, can require donation of the fees under the IGA as part of that in an annexation agreement. And I think they ignored the plain language of the IFL, which clearly defines what it applies to. It allows for impact fees to supplement other sources, correct? And it does do that. It does do that. And in this case, I would argue the annexation agreement and funding that comes through that would be a supplemental source that municipalities, along with the county, are allowed to execute on and do by way of an inter-governmental agreement. Lastly, I'd just point with, if I have a little bit of time, they raised some constitutionality arguments within their brief. I think one, you take a look at count one of the complaint, constitutionality never raises the basis of the DACA action brought against the county. It's referenced generally in one paragraph 39, but there's no specific allegations claiming that the IGA somehow is unconstitutional. There's no request within count one that it be found unconstitutional. I think it's not raised. It's not an issue. Even when you get to, he raises the unconstitutional conditions standard. He kind of conflates and he ignores the one main element that applies in the test for that, which is rough proportionality. And we go through the elements, and they're laid out in the IGA, the different findings that support the fact there is rough proportionality here. And in this case, there's 100 trucks a day going in and out, dump trucks? As of March of 2022, yes, 100 large dump trucks bringing fill into the fill site. Which means road damage. Road damage, lots of road use, et cetera. So that, coupled with the findings, because the county, in conjunction with the three villages who are original signatories to the agreement, they made the determinations looking at what growth could do in this particular area, that these road improvements are going to be necessary for the health and safety of the public and for the influx of additional traffic that's going to occur through these developments, which is actually proven to be true with the HabDap project. He talks about the SIA facility that's next to it, but again, we've got 100 trucks on average coming per day. With regard to that argument, even though it was not pled, the argument was made before the trial court, so it's preserved, correct? Well, it was raised at the summary judgment level, but it's not a basis at that point to defeat either the county's summary judgment or be a basis for theirs. It's too late at that point, would be our argument. So, based on that, I think you'd find, one, it waives the argument regarding constitutionality. Two, even if you get into the constitutional conditions, it doesn't apply here. And then three, and we cite to it, there are second district cases that recognize parties can contract away rights, including constitutional rights, for an annexation agreement. And that kind of goes with the idea of what the Illinois Municipal Code provides with regard to donation of land and money, which again is what is envisioned and how this fee would apply if it was to apply to HabDap through his properties, if Mundelein had done what they're obligated to do under the IGA. So, in sum, we would ask this court to affirm the trial court's ruling, granting summary judgment in favor of the county, and denying the cross-motion for summary judgment of HabDap. Thank you very much. Any additional questions? Thank you, counsel. Wish to reply? Thank you. A couple of quick points in response. First, in the complaint, count one, paragraph 39, we state, plaintiff has a tangible legal interest in avoiding the payment of unconstitutional road improvement impact fees. In the wherefore clause, subparagraph C, the county of Lake does not have the authority to condition the issuance of an access permit or any other discretionary benefit upon HabDap's agreement to pay improvement impact fees set forth in the agreement, and we go on in the next subparagraph to paraphrase, in essence, what the Northern Illinois Road Builders case articulated. So we clearly not only alleged, but we maintained the constitutional argument throughout. Counsel mentioned that Schor wasn't relied upon or considered. Schor consumed probably 80 percent of the oral argument before the trial court with respect to the motion. So Schor was extensively argued as support for the county's position by the county. Counsel mentions rough proportionality and then kind of moves right into there's 100 trucks per day. Well, I would submit to the court that the rough proportionality is exactly what the IFL is designed to do. The formula for determining the amount of the fee is exactly the kind of rough proportionality that the cases discuss as appropriate when one is arriving at a fee. What we have here, let me preface this by saying Section 904, and I had really stopped short. Section 904 says an impact fee payable by a developer shall not exceed a proportionate share of costs incurred by a unit of a local government, which are specifically and uniquely attributable, et cetera. This whole issue about the road improvement impact fees began with the Northern Illinois Home Builders case, which came from this district and then ultimately the Illinois Supreme Court. It was then and thereafter embodied in the IFL. I don't believe that a county and a group of municipalities can decide amongst themselves to develop a scheme to avoid what the legislature, following the Supreme Court decision, has determined the appropriate means and mechanisms by which these impact fees are to be determined. Yet that is exactly what the IGA seeks to do here. They avoid public notice. They avoid debate. They avoid, as I said, detriment. Literally every requirement of the IFL is avoided by the county and the municipalities in determining the fee on a per acre basis. Literally every single one of those requirements are avoided. Then why does the legislature say the defined road improvement impact fee is something a charge conditioned on the building permit or the CO? Why not just say a fee imposed upon an owner or a fee imposed upon a developer? Wouldn't that have better suited your construction of the statute? If Your Honor is suggesting that Section 903 could have been written more clearly, I don't disagree with the Court. I mean, it could have been. That said. Well, because the possibility was written clearly in terms of reflecting their intent. Then if that's the case, Your Honor, then how do we reconcile 903 with 904? You can't. If you read the limitation that the county argues applies to the definition in 903, then you cannot read 904 to mean exactly what it says, is that no impact fee shall be imposed, et cetera, without compliance with the law. That an impact fee to be paid is required to be proportionate, and proportionality requires that it be specifically and uniquely attributable to whatever use the property is to be employed. So my point to the Court is that if we read the limitation into 903 that the county argues, then we hand the municipalities and the counties a mechanism by which to avoid the law. My example, which is that. Well, what if the fee was required to be paid at the time the building permit is applied for? That's clearly a different point in time, and therefore their argument in that would suggest that it doesn't have to be complied with. Yes, Your Honor, I was speeding up. Take your time. Suppose we agree with you and we reverse the trial court. What is the county to do about the damage caused by your client's operation to the roads? Well, we're assuming that there is damage. Well, I mean, it's common knowledge that trucks do damage to roads, especially heavy dump trucks. My point would be that's the sort of, that's part of the calculus that goes into determining what an appropriate fee is. The county had that opportunity. So the HAPDAP does not have to pay anything? Well, HAPDAP, I mean, as it relates to specifically a road improvement impact fee, my argument would be it does not have to pay an unlawful fee, which this would be. What options the county, or the village for that matter, now that the property has been annexed into the village, have going forward, that remains. Let him finish. I was interested in the question and the answer. That remains to be seen because the property is going to undergo another use. In other words, at the point in time when the clean fill operation is complete, it's a temporary use, the property then goes over to the village of Bundeline for park purposes. My point is I don't know at that point whether the access to the county highway changes at that point in time in such that the issue could be or should be revisited. And I'm not looking to avoid the court's question, but it's a hypothetical that I really don't know the answer to. But I do know that the county and the municipalities had the opportunity to follow the law and take all of that into account in assessing the fee. You've given the answer I expected you would give, and it's an unknown. I can't give another answer. Do you have any other questions? Any other questions? Counsel, if you want to wrap up. I really don't have anything more to say. I would respectfully ask the court to reverse the decision made by the trial court in granting summary judgment for all the reasons stated, and I thank you. Thank you. Gentlemen, thank you. Very interesting arguments this morning. Fascinating case. We will be in recess for a few minutes, and we'll issue a written disposition within a few weeks.